IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:20CR00114 DPM |
| | ) | |
| EDDIE SCOTT SEATON | ) | |

## UNITED STATES' NOTICE OF INTENT TO PRESENT OTHER ACTS EVIDENCE

The United States of America, through Jonathan D. Ross, United States Attorney for the Eastern District of Arkansas, and Kristin H. Bryant, Assistant U.S. Attorney for said district, hereby gives formal notice of its intent to present at trial evidence regarding handwritten writings/stories created by the defendant.

The United States maintains that the evidence is intrinsic to the offenses charged in the Indictment and constitute statements of the defendant. Further, to the extent that any of the additional evidence is not intrinsic to the charged criminal conduct, it is admissible under Federal Rules of Evidence 404(b).

## I.     Introduction

The defendant is charged in a two count Indictment with receipt of obscene visual representations of the sexual abuse of children, a violation of Title 18, United States Code, Section 1466A(a)(1) and possession of child pornography, a violation of Title 18, United States Code, Section 2252(a)(4)(B).

On December 12, 2019, Little Rock Police Department Detective Amber Kalmer was contacted by Special Agent (SA) Jesse Smith with the North Dakota Bureau of Criminal Investigations, who was conducting investigations into the use of P2P file sharing programs for violations of Title 18, United States Code, Section 2252(a)(2) [receipt/distribution of child

pornography] and Title 18, United States Code, Section 2252(a)(4)(B) [possession of child pornography/ access with intent to view].   While conducting this investigation, SA Smith was connected to the Bit Torrent network (a public file sharing network which uses the internet) using a Bit Torrent client software program.   Specifically, SA Smith advised that he downloaded suspected child pornography on December 11 and December 12, 2019, from IP address 173.216.2.194.

On December 11, 2019, SA Smith was connected to the Bit Torrent network.At approximately 1:17:54 hours UTC, SA Smith downloaded a digital MP4 file believed to contain child pornography from the computer located at IP address 173.216.2.194.  The file name was "Julyjailbait- children's reactions to child porn compilation ptch preteen MK."  The video was approximately nine minutes and twenty-nine seconds with audio.  At the beginning of the video it says 'Project MK~ultr@ part 4 "reactions-2-CP Vol. 2" KinGoftheKonG.   The video is a compilation of numerous videos involving child pornography. During the video, there is a prepubescent female completely nude, laying on her stomach.  An adult male is completely nude and on top of the prepubescent female, lifting up her hips and inserting his erect penis into the prepubescent female's anus.  The video then transitions to a prepubescent female laying on her back wearing nothing but black knee high stockings.  An adult male is inserting his erect penis into her vagina and a title on the screen says "Name: Lea Age: 9 years Scene: Fucking her tight pussy".  Another video is of a prepubescent female completely nude sitting in a chair.  An adult male, completely nude, is holding his erect penis as it is being inserted into the prepubescent female's mouth.  The video screen says "Name: Michelle Age: 4 years Scene: blowjob".

On December 12, 2019, at approximately 12:27:30 hours UTC, SA Smith downloaded one digital MP4 file (titled ProjectNew-PTHC- hard anal play (low q) and one digital JPG file (titled

ProjectNew-PTHC- hard anal play), believed to contain child pornography from the computer located at IP address 173.216.2.194.  The files are described below.

a.    **ProjectNew-PTHC- hard anal play (low q):** A video with audio lasting approximately three minutes and twenty-five seconds.  The video is of a prepubescent female laying on her back, on a bed, completely nude.  The prepubescent female has her knees pulled up to her chest and the focus of the video is on her vagina.  The prepubescent female inserts her fingers into her vagina.  After some time, an adult male who is also completely nude, gets on the bed.  The adult male penetrates the prepubescent female's vagina with his erect penis repeatedly.

b.    **ProjectNew-PTCH- hard anal play:** A collage of images (approximately 9 total) of the prepubescent female mentioned in the video above, being penetrated by an adult male's penis.

Det. Kalmer conducted an internet search on the origin of the IP address 173.216.2.194 and found it to be issued to the internet service provider, Suddenlink.  As a result of this information, Judge Melanie H. Martin signed a court order on December 12, 2019, to require Suddenlink to provide records and other information pertaining to the subscriber for IP address 173.216.2.194.

On December 18, 2019, Suddenlink responded to the court order indicating that the following subscriber had been assigned the IP address 173.216.2.194  on 12-12-2019 at 12:27:30 hours UTC:

Target: 173.216.2.194
First Name: Scott
Last Name: Seaton
Address (service and billing): 905 Eastern Avenue
City: Cabot
State: Ar

Zip Code: 72023
Account Activation date: 06/02/2006
Email Address: n/a
Service Home Phone: 501-422-0236

On December 30, 2019, at approximately 1702 hours, law enforcement executed a federal search and seizure warrant at 905 Eastern Avenue, Cabot, Arkansas 72023. Contact was made with Eddie Scott Seaton, an officer with the Little Rock Police Department, and Michael Kevin Hicks.

Hicks signed a consent to search form, authorizing the search of his vehicle, which was parked in the driveway of the residence. Hicks advised where items were located inside the vehicle to include a cellular telephone and laptop. Hicks gave the password to both devices.

An onsite preview was conducted on the laptop located in the vehicle of Hicks. Numerous images of child pornography were located on the laptop. Hicks was read his *Miranda* Rights and agreed to give a statement. Hicks stated he looks at pornography and later elaborated that the type of pornography was Hentai (Japanese Anime). Hicks admitted to having knowledge of Bit Torrent, but once asked about sharing and downloading child pornography, he requested an attorney. The interview was concluded at this time.

A forensic review of Hicks's electronic devices revealed over 200 videos containing child pornography.[1]

---

[1] On March 6, 2020, Hicks was indicted on two counts of receipt of child pornography, a violation of Title 18, United States Code, Section 2252(a)(2), and one count of possession of child pornography, a violation of Title 18, United States Code, Section 2252(a)(4)(B) in case number 4:20-CR-00104 DPM. On September 22, 2021, Hicks pled guilty to possession of child pornography. On August 24, 2022, Hicks was sentenced to 84 months' imprisonment and 84 months' supervised release.

At approximately 2054 hours, Arkansas State Police (ASP) Corporal Moomey advised Seaton of his *Miranda* Rights utilizing the LRPD *Miranda* Rights Form.   Seaton signed his *Miranda* Rights and advised he understood and would give a statement.

Seaton's statement was digitally recorded.  Before the interview began, Seaton threw up in a trashcan.  He stated he was friends with Hicks since college.  Seaton advised he would not allow Hicks to stay inside his residence but would let him stay in his vehicle, in the driveway.  Due to the weather getting cold, Seaton stated he purchased a heater for Hicks to use in his truck and it was plugged in using an extension cord from the residence.  Seaton later stated Hicks left several personal items inside the residence, including about six computers.  Seaton admitted to having his own desktop and laptop.  Seaton further stated that Hicks did not have access to his computers on December 10, 11, or 12 of 2019.  Corporal Moomey advised Seaton that he seemed to not be answering the questions truthfully and possibly being deceptive.  Seaton stated he was not being deceptive and paused, then stated "not that he was aware of".  Seaton advised he became interested in pornography when his wife became very ill.  He stated he was curious about bestiality and Hentai (Japanese Anime pornography).  Seaton stated that he did look at the "cartoon stuff" (anime) and it would be "an adult female with a juvenile male."

An onsite preview of Seaton's cellular telephone was completed as well as an onsite preview of one desktop computer.  Due to the capacity of the desktop computer, the onsite preview was only of a small percentage.  During the preview, Detective Kalmer observed several images of anime depicting child pornography.  A description of one image is a prepubescent male inserting an erect penis into the anus of an adult female.

During the search of Seaton's office, law enforcement located handwritten writings/stories about incest and raping a teenage babysitter.  The writings/stories are attached as Exhibit 1.  All

of the stories appear to have an index at the bottom detailing the contents of the story, as well as the individuals involved.  One story is titled, "Blackmailed Babysitter," and is about a 12-year-old boy blackmailing his babysitter into having sex.  Another story is titled, "Tony's Drunk Mom," and is about two 14-year-old boys raping Tony's mom who is drunk.  A third story is titled, "The Cool Mom," and is about a mom who has sex with her teenage children and their friends during a party.  During his *Mirandized* interview, Seaton admitted to writing these stories years ago.  He stated he wrote "some incest stories" about "kids and step moms."

A forensic exam of Seaton's desktop computer, which was in the same office as the handwritten writings/stories revealed over 61,000 carved images of child pornography and child erotica.  Some of the child pornography images are described as follows: (1) a nude prepubescent female standing with the image zoomed in on her vagina; (2) a prepubescent female completely nude on a bed, on all fours, facing the headboard, with her legs spread exposing her vagina; (3) two nude prepubescent females sitting in a black chair with one exposing her vagina; and (4) a prepubescent female wearing a white tank top and nothing else, laying on her side with her legs spread exposing her vagina. The forensic exam also revealed 30 images of child pornography anime, one of which depicted a nude adult female on her back with a young boy inserting his penis into her vagina and another young boy standing near the head of the female with his penis in the female's mouth.

The United States seeks to admit evidence of the defendant's writings/stories as intrinsic evidence, and, in the alternative, 404(b) evidence.

III.    **Analysis**

*A.  The Defendant's Writings/Stories are Intrinsic Evidence*

The writings/stories are admissible as "*res gestae*" or "intrinsic" evidence and as a statement of the defendant.  As the Eighth Circuit has observed:

> Under the theory of *res gestae*, evidence of prior crimes can be admitted when the prior crime is "so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." [Citations omitted] When evidence is admitted under *res gestae*, Rule 404(b) is not implicated.

*United States v. Riebold*, 135 F.3d 1226, 1229 (8th Cir. 1998) (quoting *United States v. Forcelle*, 86 F.3d 838, 841 (8th Cir. 1996)).

This doctrine is based on the idea that "[a] jury is entitled to know the circumstances and background of a criminal charge.  It cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *United States v. Savage*, 863 F.2d 595, 599-600 (8th Cir. 1988) (quoting *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984)).  *See also United States v. Tyerman*, 701 F.3d 552, 562 (8th Cir. 2012) (evidence of other acts is admissible as intrinsic evidence where it "completes the story or provides a total picture of the charged crime.") (quoting *United States v. Johnson*, 463 F.3d 803, 808 (8th Cir. 2006)).

The writings/stories are intrinsic evidence of the charged offenses because they prove knowledge and intent to commit the crimes charged in the Indictment. *See*, *e.g.*, *United States v. Moberg*, 888 F.3d 966, 969 (8th Cir. 2018) (evidence that defendant had possessed or viewed the child pornography images charged in the Indictment within months of the charged instance were "simply evidence that he committed the charged acts[,]" and were therefore not other acts covered by Rule 404(b)).  For example, to prove the charged counts, the United States will offer evidence

that the desktop computer containing the child pornography was located in the defendant's residence that he shared with only his wife. That desktop computer was located in the same room as the writings/stories and in close proximity to the defendant's Little Rock Police Department badge. Notwithstanding Seaton's explanation that he wrote the stories "long ago," their presence in the same location as his computer used to access, store and view child pornography and anime illustrates the connectedness of the two media. The written, visual and audio media child sex fantasies are intrinsic to each other. Thus, evidence of the defendant's handwritten writings/stories is direct evidence that he committed the charged offenses. Evidence that the defendant authored and possessed stories about children engaging in sexual relationships with each other and adults, shows the defendant thought and fantasized about the very child pornography that he knowingly looked at and possessed.

### B. The Evidence is Admissible Under Rule 404(b).

To the extent that any of the proffered evidence is not admissible for the reasons discussed above, it is also admissible under Rule 404(b). The proffered evidence is relevant to the defendant's intent and absence of mistake in possession child pornography and child pornography anime. Furthermore, it tends to show his knowledge of the child pornography located on his computer. The United States anticipates the defendant will raise a general denial defense or attempt to place blame on Hicks. The writings/stories rebut that defense.

"Rule 404(b) provides that '[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character,' but '[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Riepe*, 858 F.3d 552, 560 (8th Cir. 2017). "Evidence is

admissible under Rule 404(b) if it satisfies the following requirements: (1) the evidence of the bad act or other crime is relevant to a material issue raised at trial; (2) the bad act or crime is similar in kind and reasonably close in time to the crime charged; (3) there is sufficient evidence to support a finding by the jury that the defendant committed the other act or crime; and (4) the potential prejudice of the evidence does not substantially outweigh its probative value." *Id*.

"[E]vidence of prior bad acts 'should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the [prior acts].'" *United States v. Felix*, 867 F.2d 1068, 1072 (8th Cir. 1989) (quoting *Huddleston v. United States*, 485 U.S. 681 (1988)). Other acts evidence is admissible under Rule 404(b) if proven by a preponderance of the evidence. *United States v. Hill*, 638 F.3d 589, 592 (8th Cir. 2011). Moreover, it is well settled that Rule 404(b) is a rule of inclusion. *United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006).

In *United States v. Johnson*, the United States attempted to offer as 404(b) evidence two stories detailing the abduction and forcible rape of a 13-year-old girl and the incestuous rape of a 15-year-old girl found under the defendant's bed "because the stories demonstrate the defendant's interest in and predisposition to possess child pornography." 439 F.3d 884, 886 (8th Cir. 2006). The district court permitted the introduction of the stories and instructed the "jury that it could consider the evidence to prove Johnson's inherent tendency to commit the acts charged in the Indictment." *Id*. Johnson was convicted and appealed. *Id*. at 887. The Eighth Circuit reversed finding that the evidence of the stories was improperly admitted. *Id*. at 888-89. Specifically, the Court noted:

> In this case, the government argues Johnson's possession of stories about the rape of young girls proves he is more likely to knowingly possess child pornography because it demonstrates he has a particular "type of interest." . . . Here, the government is also arguing the evidence was admissible because it proves Johnson had a propensity to possess such materials. Moreover, we do not believe the

9

evidence directly rebuts Johnson's claim he mistakenly downloaded the prohibited images. Johnson does not claim the visual depictions found on his computer are not readily identifiable as prohibited child pornography. Rather, he contends he inadvertently downloaded the images while searching for legitimate online material. Offering the stories added nothing to aid the jury in determining whether child pornography could be inadvertently downloaded. Instead, it encouraged the jury to conclude Johnson intentionally and knowingly sought out images of child pornography because he had a propensity to possess such materials. Accordingly, we reject the government's proffered justification for offering the 404(b) evidence.

*Id*. at 888.  The Court further discussed:

There is no dispute Johnson downloaded files containing child pornography onto his computer. Whether he did so knowingly, however, is disputed. The discovery of the two printed stories in his bedroom, other than suggesting he is someone who likes child-related pornography, does nothing to further the government's claim he knew the computer files contained prohibited material. In light of the district court's stated reasons for admitting the evidence, and its instructions to the jury to consider the stories as evidence of Johnson's predisposition and inherent tendency to commit the crimes charged, we conclude it was error to admit the evidence under Rule 404(b).

*Id*.

In *United States v. Evans*, the United States filed a motion in limine to "introduce stories found on Evans's media devices about adult men engaged in sexual acts with minors."  802 F.3d 942, 947 (8th Cir. 2015).  The district court initially denied the motion stating that "at this time, the stories are probative only of Evans's prurient interest in children."  *Id*. at 947.  At the close of the United States' case, the Court admitted the evidence because it found that Evans had opened the door to it.  *Id*.  Evans appealed.  The Eighth Circuit discussed the following:

We are not persuaded that Evans "opened the door" to the admission of this evidence. Evans's defense was that he had no knowledge of the images and videos of child pornography on his media devices and that a computer virus of some sort must be to blame. Evidence that the images and videos were highly organized on the media devices may counter this defense; as the district court noted, such organization suggests Evans gave more than "casual attention" to the materials. The fact that sexually explicit stories were among these highly organized materials,

however, does not have similar evidentiary value. Introducing evidence that these stories were stored in the same systematic fashion on the media devices as the images and videos "does nothing to further the government's claim [that Evans] knew the [media devices] contained prohibited material." *Johnson,* 439 F.3d at 889. Thus, even after Evans asserted his lack of knowledge, evidence of the stories on Evans's hard drive remained merely propensity evidence that showed, if anything, Evans's predisposition to possess child pornography. To this extent, therefore, the stories were inadmissible. *See* Fed.R.Evid. 404(b).

However, it appears from the government's representation to the court at trial that some of the stories were located in a folder that also contained Evans's personal documents. Unlike the stories located and organized with the images and videos, evidence of stories that were located with personal documents may be admissible to show absence of mistake or accident. This is because the location of the stories reflects on the truth of Evans's defense. As noted, the existence of stories located with the rest of the child pornography materials and organized in the same systematic fashion sheds no light on whether Evans knew about the images and videos. But, if the stories were located in the same folder as some of Evans's personal files, and if Evans accessed that folder, such evidence would tend to suggest Evans was aware of the stories on his media devices. And that would tend to refute his defense that he had no knowledge of any inappropriate materials that may have been downloaded onto his media devices by a computer virus. Yet the government did not make this distinction clear. In arguing for the non-propensity admission of the stories, the government did not articulate what type of personal documents the stories may have been stored with, or explain how their specific location refuted Evans's defense that he did not knowingly possess child pornography.

*Id.* at 947-48.

Ultimately, the Eighth Circuit found that "the record therefore does not clearly reflect a legitimate, non-propensity purpose for admitting the stories into evidence. *Id*. at 948. However, the Eighth Circuit concluded, "that any error that did result from the admission of the stories was harmless." *Id*.

This case is distinguishable from *Johnson* and *Evans*. First and foremost, the defendant admitted to authoring the handwritten writings/stories. These writings are his thoughts, not

someone else's.  Furthermore, the writings/stories were found in his residence, near his badge.  As discussed in *Evans*, "evidence of stories that were located with personal documents may be admissible to show absence of mistake or accident."  In this case, the writings/stories were located with Seaton's personal items and in close proximity to the desktop computer containing the child pornography.  Therefore, the location of these stories/writings refute any defense that Seaton did not know the child pornography was there or that Hicks was the one who possessed the child pornography.

Furthermore, unlike in *Johnson*, the defendant does not appear to be arguing that he inadvertently downloaded the child pornography.  There is nothing in the records that supports this position, and the defendant thus far has not raised this defense.  The United States is not offering the evidence of the writings/stories solely to establish an interest in young children but is offering it for the permissible purposes found in Rule 404(b).

In distinguishing *Johnson* and *Evans*, the Eighth Circuit in *United States v. Fechner* discussed that the stories in those cases "were offered solely to establish an interest in young children" and that "no other possibility existed for their usefulness at trial."  952 F.3d 954, 962 (8th Cir. 2020).  However, the 404(b) child erotica evidence in *Fechner* was admissible because, unlike in *Johnson* and *Evans*, "the child erotica's location in the same place where deleted child pornography hash values were found, and evidence that child erotica had to be manually moved to the SD card, was relevant to the jury's determination of whether Fechner knowingly possessed child pornography."  *Id.  See also*, *United States v. Croghan*, 973 F.3d 809, 820-21 (8th Cir. 2020) (holding that "as in *Fechner*, where the child erotica images were admitted to prove motive and rebut claims of accident or mistake, the pictures of Croghan's relative on PrimeJailBait.com and testimony concerning those pictures were offered for the permissible purpose of proving

Croghan's identity as Beau2358."); *United States v. Bartunek*, 696 F.3d 860, 863 (8th Cir. 2020) (admitting 404(b) evidence of the defendant's possession of life-sized dolls because "Bartunek's theory of defense was that someone else accessed his internet service, downloaded images to his devices, and distributed the child pornography. The dolls were relevant to overcome the defense by showing Bartunek's motive for acquiring and distributing child pornography. That Bartunek derived gratification from the replicas of young children gave him a motive to possess and distribute child pornography.").

The writings/stories in this case go to prove the defendant's intent, knowledge, and motive to download child pornography and possess it.  Furthermore, it goes to rebut any claims of accident or mistake.  The proffered evidence is close in time to the events charged in the Indictment, and is relevant.

Finally, admission of the proffered evidence would not unduly prejudice the defendant or confuse the jury.  The evidence is either less prejudicial than the other evidence that will come in at trial, and/or is the same as the substantive evidence in this case.  Moreover, any unfair prejudice can be addressed by the Court instructing the jury as to the proper purposes of any Rule 404(b) evidence.

## IV.    Conclusion

For the foregoing reasons, the United States requests the Court hold that the defendant's writings/stories are admissible as intrinsic to the charged conduct. In the alternative, the defendant's writings/stories may also be admitted under Federal Rule of Evidence 404(b).

JONATHAN D. ROSS
United States Attorney

Kristin H. Bryant
Assistant U.S. Attorney

AR Bar No. 2009156
P.O. Box 1229
Little Rock, AR  72203
(501) 340-2600
Kristin.Bryant@usdoj.gov